MARY ETTER, Appellee, v. JAMES O'NEIL *et al.*,
Appellants.

1.   **Practice:** BILL OF EXCEPTIONS: TIME OF FILING.   Where motions
     for a new trial and in arrest of judgment were properly filed in a
     cause, but, by reason of the expiration of the term before the same
     could be heard, they were not heard and determined until the next
     succeeding term of court, when, being overruled, the moving party
     was given sixty days thereafter within which to file a bill of excep-
     tions, and the bill was filed within the time allowed, *held*, that the bill
     was not invalid because no extension of time was granted by the
     court at the trial term for filing the same.

:2.   ———:   APPOINTMENT OF SHORTHAND REPORTER: JUDGE'S CERTIFI-
     CATE TO EVIDENCE.   Where the shorthand reporter who took down the
     evidence in a cause was not regularly appointed by the court, but was
     recognized by the judge thereof by the latter's certificate to the evi-
     dence, *held*, that such certificate could not be invalidated by a subse-
     quent certificate of the judge to the effect that no formal appointment
     of the reporter had been made.

.3.   **Conversion:** LANDLORD'S ATTACHMENT: USE OF PROPERTY PENDING
     ATTACHMENT PROCEEDINGS.   Where, under a landlord's attachment, a
     sheriff levied upon the furniture and effects of the lessees of a hotel
     building, and, instead of removing said property, took a receipt there-
     for of one D., who, as agent for the owner of the hotel, kept the same
     open, and used the attached property for about sixty days, when it
     was sold under the attachment, *held*, that in the absence of evidence

of any damage to the furniture by reason of its use pending the attachment proceedings, and it appearing that its removal from the hotel would have been attended with great expense, and with damage to the property, a judgment against the sheriff and the agent, D., for the conversion of the attached property was erroneous.

*Appeal from Council Bluffs Superior Court.*— HON. J. E. F. McGEE, Judge.

SATURDAY, OCTOBER 24, 1891.

ACTION at law to recover damages for an alleged unlawful seizure and conversion of certain personal property. There was a trial by jury, and a verdict and judgment for the plaintiff. The defendants appeal.—*Reversed.*

*Sims & Saunders* and *Walter I. Smith*, for appellants.

*Ambrose & Duffie, E. E. Aylesworth* and *Mynster, Lindt & Seabrook*, for appellee.

ROTHROCK, J.—I. The appellee presented a motion to strike from the record the bill of exceptions made and filed in the case. It appears

1. PRACTICE: bill of exceptions: time of filing.

from the record that the case was tried at the March term, 1890, of the superior court, which term was finally adjourned on the second day of May, 1890. A motion for a new trial and in arrest of judgment was filed during the term. These motions were not disposed of at that term. The arguments on the motions in arrest of judgment and for a new trial were made, and the motions submitted on the twelfth day of May, 1890, which was during the May term of said court; and the motions were taken under advisement, and, by agreement of the parties, either party was to have sixty days from the date of ruling on said motion within which to settle and file bill of exceptions. The motions were overruled on the sixth day of

June, 1890, and a judgment was entered on the same day, and the defendants were allowed sixty days from June 6 to settle and file a bill of exceptions. The bill was filed within that time. It is claimed that the bill of exceptions is improperly in the record, because no order was entered of record at the March term extending the time for filing a bill of exceptions beyond the term. The objection is absolutely without merit. The hearing of the motions in arrest and for a new trial were continued by operation of law from the March to the May term. They were heard at the May term, and overruled, and the agreement made that sixty days should be allowed for filing a bill of exceptions. It was not known that the defendants would desire a bill of exceptions until the motions in arrest and for a new trial were overruled.

Another objection to the bill of exceptions is that the shorthand reporter who took down the evidence was not regularly appointed as such reporter by the judge. The certificates made by the judge recognized the reporter as the official reporter of the court. But, in a certificate taken from him by the appellee in aid of the motion to strike the bill of exceptions, it appears that no formal appointment of the reporter was made by the judge. We cannot recognize this last certificate. The appellee ought not to be allowed to use this certificate to aid in the defeat of an appeal to this court. Besides, the reporter was *de facto* an officer of the court, and that was sufficient. The motion is overruled.

II. It appears from the record that the defendant Stout is the owner of a hotel at Council Bluffs, known 2. ——: appointment of shorthand reporter: judge's certificate to evidence. as the "Ogden." He is not a resident of that place, and his hotel was leased and operated by tenants. The defendant Dooley was his resident agent, who looked

after his interests in his absence. The lease was orig-
inally made to Davenport & Hunt for a term of five
years from March, 1888. A transfer was made of said
lease to Winters & Milligan, and in May, 1889, the last-
named parties transferred the lease to Etter & Pierce.
The defendant Stout concurred in these transfers. The
tenants owned the hotel furniture, and in the respect-
ive transfers the incoming tenants purchased the said
furniture. Etter & Pierce kept the hotel open for
guests until October 22, 1889. There was at that time
about fourteen hundred dollars of rent in arrears, and
the defendant Dooley, acting for the defendant Stout,
commenced an action for the rent, and procured a
landlord's attachment to issue. The defendant O'Neil
was sheriff, and when the attachment came into his
hands he went to the hotel, and attached the furniture
by making a levy thereon. This furniture consisted
of carpets on the rooms in the house, and beds, bed-
steads, dining-room and kitchen furniture, and other
furnishings usually found in an hotel. When the sher-
iff went to the hotel to make the levy, Pierce, one of
the members of the firm of Etter & Pierce, had aban-
doned the hotel, and made some sort of transfer to his
copartner Etter, who was in possession when the sher-
iff served the writ, or soon thereafter. The said Etter
took the books from the office, and what money there
was in the office drawer, and left the house. It appears
that the house had been kept at a loss. The levy on
the furniture was made at about two o'clock in the
afternoon, and before Etter left he advised the guests
that the house was in the hands of the sheriff, and he
made no preparations for furnishing the next meal.
He went over the Missouri river to Omaha, and pro-
cured the services of an attorney, and returned to the
hotel in the evening. A demand was made on the
sheriff to remove the attached property from the hotel.
An interview was had by Etter and his lawyer with

Dooley at the hotel, in which a similar demand was made, and Etter or his attorney laid a key on the table, with the declaration that Etter surrendered the possession of the house to the owner. There is no evidence that Dooley assented to this alleged surrender of the lease and possession. The sheriff made efforts to procure a place to store the furniture, but was unsuccessful, and he took a receipt for the same from Dooley, in which it was recited that Dooley was to hold the said property for the sheriff, and return it to him when demanded, or when required in the said attachment suit. Dooley kept the house open for guests, and the furniture was used in the hotel in the ordinary way, until the twenty-fifth day of January, 1890, when it was duly and legally sold by the sheriff at public sale under said writ of attachment. It also appears that a removal of the furniture from the house, and the storage of it in a warehouse or other storeroom, would have greatly damaged it and diminished its value, and that it would have been attended with great expense and loss. No charge was made by Dooley for the storage of said property in the hotel. After the levy was made, Etter assigned his interest in the matter to Mary Etter, the plaintiff, who is his wife.

III.   We have given a general statement of facts, which are really not in dispute. This action was brought in about one month after the levy was made, and it is claimed by the plaintiff that the seizure of the goods under the writ was wrongful, and without any authority therefor, and that the defendants then and there wrongfully converted said property to their own use. The issue thus presented was whether the seizure of the property and the failure to remove it from the hotel was a wrongful conversion. There is no claim made anywhere in the record that the levy of the attachment was wrongful, except the

3. CONVERSION: landlord's attachment: use of property pending attachment proceedings.

averment in the petition; and there is no evidence that any of the defendants at any time intended to do more than execute the writ of attachment. The fact is that the sheriff's sale of the property was so far as it appears in all respects lawful and regular. There is no evidence that any damage resulted to the property by allowing it to remain in the hotel for the period of about sixty days between the levy and the sale, and the defendants offered evidence as to the investigation made by the sheriff as to the probable expense that would necessarily have been incurred if he had been obliged to tear up the carpets, take down the bedsteads, and pack up the beds, bedding and other property, and find a warehouse, and store the goods therein pending the litigation. For some reason the court held that evidence of this kind was incompetent. How this ruling could have been made in the face of the fact, standing out all through the record, that the levy of the attachment was rightful, is more than we can understand. It was surely competent for the officer to show his good faith and want of intention to convert the goods to his own use.

The case then involves the single question, did the use of the goods in the hotel, as they were used, amount to a conversion by the defendants? As we have said, there is no evidence of any damage to the furniture. The property was rightfully seized by the officer, and the ordinary use of it does not appear to have been any damage to the plaintiff. For aught that appears, it was better preserved, and a saving of expense, to leave it in the hotel rather than to remove it and put it in a storehouse. If so, the plaintiff suffered no damage. We think that no authority can be found holding that, under these facts, the officer should pay to the attachment defendant the value of the goods, and we are not inclined to adopt and promulgate any such doctrine.

We must decline to follow counsel, and discuss the points of their argument, and the specific objections made to the rulings of the court. We think that there should have been but one instruction given by the court to the jury, and that should have directed a verdict for the defendants. REVERSED.